James H. Craw, Appellee, v. Chicago City Railway Company, Appellant.

Gen. No. 15,153.

1. VERDICTS—*when not disturbed as against the evidence.* If the jury saw and heard the witnesses a verdict will not be set aside as against the evidence unless manifestly against its weight.

2. CONTRIBUTORY NEGLIGENCE—*what not as a matter of law.* To board a moving street car is not contributory negligence as a matter of law.

3. EVIDENCE—*when competency of proof of ordinance not raised.* The competency of evidence offered to establish the existence of an ordinance is not raised in the absence of a specific objection.

4. PERSONAL INJURIES—*what evidence competent to establish.* A person injured may be permitted to state his feeling or sensation after an accident; also, a witness may be allowed to give testimony as to mistakes which such injured person made in his work after his accident; also, the family physician and the plaintiff's son may be allowed to give evidence as to his appearance, conduct, health and disposition before his accident and changes therein after the accident.

5. APPEALS AND ERRORS—*when admission of erroneous evidence will not reverse.* Even though erroneous evidence which bears upon the question of damages has been admitted, a reversal will not be ordered unless the verdict is excessive.

6. INSTRUCTIONS—*when though marked given considered as refused.* An instruction marked given which was not actually read to the jury and which was not given to them upon the submission of the cause is to be considered as refused.

7. INSTRUCTIONS—*when refusal will not reverse.* Refusal to give a correct instruction will not reverse if its contents are substantially contained in another instruction given.

8. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction which bears upon the question of

damages and the burden of proof with respect thereto if refused will not reverse if the verdict rendered was not excessive.

9. INSTRUCTIONS—*propriety of underscoring words.* The practice of underscoring words and phrases in instructions is bad but will not reverse where the underscoring is contained in a general instruction not involving specific facts and appears to have been for the benefit rather than to the detriment of the complaining party.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed October 21, 1910. Rehearing denied November 29, 1910.

**Statement by the Court.** The plaintiff, James H. Craw, recovered a judgment for $2,500 against the Chicago City Railway Company, the defendant, for damages for personal injuries claimed to have been sustained by him while attempting to board one of appellant's cars at or near the intersection of Archer avenue and Butler street, in the City of Chicago, November 14, 1904.

The declaration is in seven counts, but, during the trial the fourth, fifth and sixth counts were dismissed.

The negligence averred in the first count is that the defendant's servants so negligently and carelessly caused its car to be started at a high and dangerous rate of speed, in Archer avenue at the intersection of Butler street, when the plaintiff was in the act of becoming a passenger thereon that by reason thereof the plaintiff was thrown with great force and violence from the car to the ground.

The second count avers that the defendant wholly neglected to slacken the speed and stop the car and keep the same in a stationary position although signaled so to do by the plaintiff who desired to become a passenger, but kept the car moving, and suddenly and violently started it with great force and violence while the plaintiff was in the act of getting upon the car.

The third count avers that knowing the plaintiff de-

sired to become a passenger the servants of the defendant slackened the speed of the car at the street intersections and thereby induced the plaintiff to believe that the speed of the car would be still further slackened and the car stopped until he could get on the car, and then while he was stepping upon the car, suddenly started the car with great force at a high and dangerous rate of speed.

The seventh count sets out an ordinance of the city of Chicago with reference to the stopping of street cars to receive and let off passengers at certain places and the violation of the ordinance.

At the close of the evidence, the defendant moved the court to instruct the jury for the defendant, which motion the court overruled.

B. F. RICHOLSON and WATSON J. FERRY, for appellant.

R. WILSON MORE and ORPHEUS A. HARDING, for appellee; FRANK L. CHILDS, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

It is not controverted in the evidence that the plaintiff attempted to get on the front platform of the car while it was in motion, and that he was thrown down and injured. It is not controverted that the plaintiff and a number of his fellow workmen were on the northwest corner of Archer avenue and Butler street, the plaintiff being some thirty or more feet west of the west line of Butler street when he made the attempt to board the car. Whether the plaintiff signaled the motorman to stop as the car approached Butler street from the northeast; whether in recognition of the signal the motorman turned off the power and slackened the speed of the car as it approached and crossed Butler street for the purpose of permitting plaintiff to enter the car, or the speed of twelve to fifteen miles an hour was kept up until plaintiff was

thrown down; whether the car was moving at the rate of three and a half or four miles an hour or upwards of twelve miles an hour just before or at the time plaintiff attempted to board it; whether at the time the plaintiff was attempting to board the car which was then moving slowly, it was suddenly started forward with great force after its speed had been slackened for the purpose of stopping and taking on passengers, are all controverted questions in the evidence. These questions bear directly upon the question of liability, and their solution one way or the other determines that question. The jury resolved them in favor of the plaintiff, and the question before us is whether the verdict is so manifestly wrong upon the evidence that it must be set aside.

The testimony of the plaintiff and his witnesses, Zeller, Hartman, Lynd, Merigold, Johnson, Haldman, Beckert, Beam and Harper who were employes with the plaintiff of Hansell, Elcock & Company, tends to show that they had left their place of employment to go to their homes and were at or near the street crossing in question for the purpose of there taking a street car; that they observed the car approaching and several of them signaled the motorman to stop; that they saw him turn off the power east of Butler street, and they observed that the car slackened its speed until it was going only about four miles an hour when it reached the northwest corner of the streets; that the plaintiff put his foot out to step on the front platform and attempted to take hold of the handle bars with both hands; that the car made a sudden start ahead just at that time and the plaintiff was thrown to the ground and partially under the car. These witnesses vary somewhat in their ways of expressing what occurred, but the substance of their testimony is as stated above.

The contentions and theory of the defendant, on the other hand, is that a congestion of cars had been produced at the railroad crossing east of Canal street

by a blockade of the street by passing trains; and that the car in question being the first one going in a southwesterly direction, proceeded over the railroad tracks and along Archer avenue at the usual rate of speed which was somewhat slackened at Canal street on account of a switch; that between Canal and Butler streets it moved rapidly and continued without slackening in speed across Butler street until after plaintiff attempted to board it, when it was then brought to a stop about twenty-five feet beyond where plaintiff was lying; that the car was thus operated because of a rule and custom that where a string of cars for any reason had been grouped together, as in this instance, the first car in the line proceeded without stopping to take on passengers until a sufficient space had been made for the passage of the others in the line, and that the conductor had given the motorman the signal not to stop before they reached Butler street, and there was no intention to stop at Butler street and the car was running at the rate of twelve or fifteen miles an hour when plaintiff attempted to board it.

These facts are testified to by Fieldstack, the conductor, O'Meara and Huntington and Cotharin, passengers on the front platform of the car, Mrs. Graff, a passenger, and Owens, the motorman, but at the time of the trial a police officer of the city. Owens says he did not turn off the power as he approached Butler street or while crossing it and did not apply the brake or slacken the speed of the car until after he heard the plaintiff strike against the car when he attempted to board it.

Appellant's contention is that the verdict is against the manifest weight of the evidence, because of the inherent improbability and unreasonableness of the testimony, and because plaintiff's injuries were the result of his own negligence in attempting to board the car while it was in rapid motion.

Upon a careful consideration of the evidence we cannot say that there is inherent improbability and un-

reasonableness in the testimony of the plaintiff's witnesses. The car might have been handled in the manner testified to by the witnesses. It was a question of fact for the jury, and the great preponderance of the evidence seems to be in favor of its conclusion on that question. The jury saw and heard the witnesses, and unless its verdict is manifestly against the weight of the evidence we cannot under the law disturb it, when, as in this case, it does not appear to be the result of prejudice, passion or some improper motive.

The well settled rule in this state as to contributory negligence in getting on a street car while it is in motion differs from the rule in Pennsylvania and possibly other jurisdictions where it is held to be negligence *per se* (Powelson v. United Traction Co., 204 Pa. 474; Hunterson v. Union Traction Co., 55 Atl. 543). In the leading case in this state, Cicero Street Ry. Co. v. Meixner, 160 Ill. 320, it was held at page 325: "The rule as applicable to steam railways is relaxed when applied to horse cars or street railways. (Terre Haute etc. Railroad Co. v. Buck, 96 Ind. 346; Sloner v. Pennsylvania Co., 98 *id.* 384). Beach on Contributory Negligence (Sec. 90) says: 'It is well settled that it is not contributory negligence *per se* for one to alight from or to board a moving street car, and here again we find the severity of the rule as applicable to steam railways essentially relaxed.' Booth on Street Railway Law (Sec. 336) lays down the same rule in the following language: 'Although the act of boarding a car while in motion is always attended with some risks, the rules applicable to persons entering cars operated by steam are not usually applied with the same strictness to street railways operated by horse power. It is a general rule, established by numerous decisions, that if a person who has free use of his faculties and limbs has given proper notice of his desire to be taken up, and the speed of the car has been slackened in the usual manner, it is not negligence *per se* to attempt to get on while it is

moving slowly, and that if a person is injured under such circumstances the question of his contributory negligence is ordinarily one of fact for the jury.' "

The court then says that this doctrine is established in nearly all of the states where the question has arisen, and cites among other cases, Sahlgaard v. St. Paul City Ry. Co., 48 Minn. 232, where the above stated rule was held applicable to a case where the motive power of the car was a cable. The court then took up the question involved in the case as to whether the rule was applicable where the motive power of the car was electricity, and held that it was applicable.

The above case has been followed by numerous cases in this state holding under similar circumstances that whether the plaintiff was guilty of want of ordinary care was for the jury. West Chicago St. R. R. Co. v. Torpe, 187 Ill. 610; North Chicago St. R. Co. v. Wiswell, 168 id. 613; Springfield Con. R. Co. v. Hoeffner, 175 id. 634; Union Traction Co. v. Lundahl, 215 id. 289. We think the court properly submitted the question to the jury as a question of fact.

The main controversy on the trial was over the rate of speed at which the car was moving at the time the plaintiff attempted to board it. A large number of witnesses testified on behalf of the plaintiff that the car was moving slowly, while a number testified on behalf of the defendant that it was moving very rapidly and at full speed. That question was for the jury to decide upon the evidence before them, and we cannot say that their verdict was against the manifest weight of the evidence.

Error is assigned upon the admission in evidence of the ordinance of the city of Chicago set out in the seventh count of the declaration. It is urged that courts do not take judicial notice of the existence of city ordinances and that no sufficient proof was made of the existence of the ordinance by the introduction of a printed pamphlet or book purporting to be published by authority of the city council, or a properly authenticated copy of the ordinance.

The only objection made to the introduction of the ordinance at the time it was offered was: "Assuming it to be correct, I object to its going in evidence; it does not apply. There is nothing compulsory about it; they are not obliged to stop under all conditions. If he has a case he has it separately from the ordinance." This objection did not raise the point now urged. From an examination of the record we cannot ascertain the nature of the evidence offered to prove the ordinance. It may have been the best evidence known to the law.

It is urged that the court erred in permitting the plaintiff to state his feeling or sensation after the accident when he came in contact with or near street cars. We find no error in the court's rulings. Nor do we see any error in admitting the testimony of the witness Smith as to the mistakes which the plaintiff made in his work after the accident.

We think it was not reversible error to admit the evidence of the family physician, and the plaintiff's son, as to the plaintiff's appearance and conduct, health and disposition, and changes therein after the accident. The evidence bore only upon the question of damages, and unless the amount of the verdict is excessive no substantial injury resulted.

The first instruction given at the request of the plaintiff is based in part upon the finding of the jury that the plaintiff signaled to the motorman of the car in question to stop for the purpose of receiving him as a passenger. It is urged that there is no evidence in the record that plaintiff made any such signal, and therefore the instruction is erroneous, having no basis in the evidence.

The plaintiff did not testify that he signaled the motorman, and the latter testified he did not see the plaintiff, but, the evidence shows that there were a large number of persons standing on the corner with plaintiff, and that several of them signaled the car to stop; that the motorman turned off the power and re-

duced the speed of the car as if to stop it for the purpose of receiving passengers. In our opinion this evidence furnished a sufficient basis for the instruction. This evidence also disposes of the objection made to the sixth instruction given at the request of the plaintiff.

The record shows that the defendant requested the court to give the following instruction:

"The jury are instructed that with respect to the alleged ailments and disabilities claimed for the plaintiff in this case, the burden of proof is upon the plaintiff in that respect, as it is with respect to the question of liability, to show by a preponderance of the evidence not only that such ailments really exist or have existed, but also that such ailments and disabilities are the result of the occurrence in question, and the burden of proof is not upon the defendant to show that such ailments do proceed or arise from any other cause. The jury are further instructed that they have no right to guess or conjecture that any ailment complained of is the result of this occurrence. The jury are not to understand from this instruction that the court intends to intimate that the plaintiff has such disabilities as is claimed, or that the defendant is or is not in any manner liable, or to intimate any opinion upon that or any other question of fact in this case."

The court marked the instruction "given," but through inadvertence of the court it was placed among the refused instructions, and was not read to the jury.

The instruction must be considered as refused in legal effect, for it was neither read to the jury nor given to them when the case was submitted.

The instruction treats of the alleged ailments and disabilities of the plaintiff claimed to be the result of the accident, and the burden of proof with respect to them. The instruction was a proper one and should have been given. We think, however, that so far as the burden of proof is concerned, other instructions given at the request of the defendant, and notably instruction 41 which we discuss later, cover the ques-

tion of the burden of proof. In its ultimate effect and purpose the instruction bears upon the question of damages to be awarded by the jury, and considering the amount of the verdict, as we shall see later, we do not think the defendant suffered material harm from the mistake of the court in placing the instruction among the refused instructions and failing to read it to the jury.

Counsel for defendant requested the court to give the following instruction:

"The court instructs you that it is the law in this case that if the evidence preponderates in favor of the defendant,

Or, if the evidence fails to preponderate in favor of the plaintiff as against the defendant,

Or, if the evidence is evenly balanced as between the contention of the plaintiff and the defendant,

Then, in either case, the plaintiff cannot recover against the defendant."

The court refused to submit it as asked, but amended the second paragraph by underscoring the word "preponderate," and the third paragraph by underscoring the words "evenly balanced" and gave it as amended.

The practice of underscoring instructions, or using display type or italics has been condemned. Wright v. Brosseau, 73 Ill. 381; Hagenow v. The People, 188 id. 545; Elwood v. C. C. Ry. Co., 90 Ill. App. 397. But this was merely a general instruction not involving specific facts, and therefore, was not of a character to injure the defendant. Furthermore, it was requested by the defendant, and we cannot see how it can complain of the emphasis given by the underscoring. It was not reversible error in this case.

Upon a consideration of the injuries shown by the evidence we cannot regard the verdict and judgment as grossly excessive. There being no reversible error in the record, in our opinion, the judgment is affirmed.

*Affirmed.*